UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendants' Motion for Summary Judgment [DE 87]

## I.  INTRODUCTION

On February 18, 2022, Kimberly Marroquin ("Plaintiff") filed a First Amended Complaint ("FAC") against the City of Los Angeles (the "City"), Los Angeles Police Department ("LAPD") Captain Richard Stabile ("Stabile"), and ten LAPD officers (collectively, "Defendants").[1] (ECF No. 27.) The FAC alleges claims under 42 U.S.C. § 1983 ("Section 1983"), as well as various state law claims. (*Id.*) Plaintiff's claims arise from an incident that occurred during the Los Angeles Lakers' 2020 NBA championship celebration, wherein one of the defendant officers, DiMaggio Rico ("Rico"), fired a 40mm less-lethal rubber bullet that struck Plaintiff in the head.[2]

Presently before the Court is Defendants' motion for summary judgment as to the federal claims and for dismissal of the supplemental state-law claims (the "Motion"). (ECF No. 87.) For the following reasons, the Court **GRANTS in part** and **DENIES in part** the Motion.

---

[1] On April 4, 2022, Plaintiff dismissed four of the LAPD officer defendants: (1) Anthony Carillo; (2) Marvin Perez; (3) William Thomas; and (4) Dominic Santiago. (*See* Pl.'s Notice of Dismissal, ECF No. 69.)

[2] At the time she filed the FAC, Plaintiff appears to have been unaware which LAPD officer fired the rubber bullet, and therefore named numerous officers as defendants. At this point in the litigation, Plaintiff has identified Rico as the shooting officer and presents no evidence regarding any other officer's liability. Accordingly, the Court **DISMISSES** all remaining officer defendants aside from Rico: (1) Matthew Clymer; (2) Alfred Corso; (3) Officer Lyman; (4) Officer Santiago; and (5) Herman Usma.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

## II. FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted:

### A. The Incident

On October 11, 2020, the City hosted a celebration for the Los Angeles Lakers, who had recently won the NBA Finals. That evening, LAPD officers were deployed to the area around the former Staples Center[3], the Lakers' home arena, to corral a crowd that was growing increasingly restless. (*See* Conlogue Decl., Ex. 31 at 54:17–21, ECF No. 92-10.) One of those officers was Rico, who was the only officer in the vicinity armed with a 40mm less-lethal launcher (the "Launcher"). (*Id.* at 39:14–22.)

At around 9:15 p.m., Plaintiff was walking amongst a crowd of people near Staples Center, intending to leave the celebration. (*See* Conlogue Decl., Ex. 30 at 24:2–4, 19:3–13, 28:14–17, ECF No. 92-9.) According to Plaintiff, she was with a crowd that was "lively" and "happy," did not witness any illegal activity around her, did not believe she was in any danger, and never heard LAPD officers issue dispersal orders. (*Id.* at 16:2–11, 22:18–23:2, 23:6–23.) Nonetheless, as she was walking near a planter lining the sidewalk, she was struck in the head with a 40mm less-lethal round fired by Rico. As a result, Plaintiff suffered a mild traumatic brain injury. (*Id.* at 27:18–28:7, 31:11–32:19, 49:10–19.)

The shot that struck Plaintiff was captured on Rico's body-worn camera. The camera footage shows a member of the crowd (who is undisputedly not Plaintiff) step into the street, throw a glass bottle at LAPD officers, and then retreat into the crowd behind the planters lining the sidewalk. (Conlogue Decl., Ex. 17 at 4:40.) Approximately three seconds after the bottle is thrown, Rico discharges the Launcher into the crowd, in the general direction of the bottle-thrower. (*Id.* at 4:43.) In keeping with LAPD policy requiring officers to verbalize the target of a weapons discharge, Rico announces: "male white, blue shirt, threw glass bottle." (*Id.* at 4:52.)

In deposition testimony, Rico stated that rather than shooting at the person who had previously thrown a bottle, he had seen a different individual who was "attempt[ing] to throw [a] bottle when I . . . utilized the less-lethal round." (Conlogue Decl., Ex. 31 at 78–79.) In firing the less-lethal round, he stated that he was protecting himself and other officers from potential harm. According to Rico, this individual was to the left of a tree growing on the sidewalk near the planters. (*Id.* at 81:12–20.) Nonetheless, he fired the less-lethal round to the right of the tree, hitting Plaintiff. (Conlogue Decl., Ex. 17 at 4:43.)

---

[3] Now Crypto.com Arena.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

    **B.**    **LAPD's Policies Regarding Use of the Launcher and Use of Force**

    LAPD officers are instructed that they should fire the Launcher only at specific targets, rather than at a crowd—in other words, the Launcher is not a crowd-dispersal weapon. (*See* Conlogue Decl., Ex. 31 at 101:1–3.) Further, the Launcher should only be fired if the officer believes there is a threat of immediate violence or physical harm, and it is not to be used either as retaliation or as a warning. (*Id.* at 99:7–16.) To that end, the Launcher should not be targeted at a fleeing suspect, and the officer should shout a warning prior to firing the device when reasonable. (*Id.* at 145:6–9; Conlogue Decl., Ex. 6.) LAPD policy also dictates that the Launcher should be aimed at the target's beltline, rather than sensitive areas like the head, neck, spine, or groin. (*Id.* at 29:6–7, 135:25–136:16.)

    As to use of force generally, LAPD does not formally investigate uses of force that occur in a crowd-control situation, so long as the incidents occur as part of the "the organized squad's activity and mission." (Conlogue Decl, Ex. 37 at 15:13–17.) Consistent with policy, LAPD did not investigate the incident here. (Conlogue Decl., Ex. 38 at 28:15–29:10, 34:16–22.) LAPD also never reprimanded or disciplined Rico for the incident. (Conlogue Decl, Ex. 31 at 37:14–17.)

    **C.**    **Rico's Training on the Launcher**

    Prior to the incident, Rico had taken a crowd control course in November 2018. That course was conducted inside a classroom and did not involve firing the Launcher. (Conlogue Decl., Ex. 36 at 21:3–22:8, ECF No. 91-14.) As a result, Rico did not become certified to use the Launcher by taking the crowd-control class. (*Id.* at 20:4–22:8.) To be certified, an officer must take the "less lethal munitions" course, which requires an officer to demonstrate that they can accurately fire the Launcher. (Conlogue Decl., Ex. 34 at 14:10–24, 17:13–16, 23:18–24:20, ECF No. 91-12.) If at any point during the demonstration the officer strikes a target's head, that officer automatically fails the course and is not certified to use the Launcher. (*Id.*) Rico did not complete the less lethal munitions course until four months after the incident that caused Plaintiff's injury. (Conlogue Decl., Ex. 36 at 27:13–23, 29:23–30:1.) Nonetheless, he was allowed to wield the Launcher that night without certification.

**III.**    **JUDICIAL STANDARD**

    Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

the nonmovant. *Id.*

On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that no evidence supports the non-moving party's case. *See Celotex*, 477 U.S. at 325. To defeat a summary judgment motion, the non-moving party may not merely rely on her pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

**IV.    DISCUSSION**

Plaintiff alleges eight claims, five of which are made pursuant to Section 1983: (1) a First Amendment violation; (2) a Fourth Amendment violation for use of excessive force; (3) a Fourteenth Amendment due process violation for state-created danger; (4) a *Monell*[4] claim against the City for unlawful policies and failure to train; and (5) a supervisory liability claim against Stabile. The remaining three claims are state-law claims for negligence, battery, and violation of the Bane Act, Cal. Civ. Code § 52.1.

Defendants seek summary judgment on all federal claims and dismissal of the state claims. The Court analyzes each claim in turn.

**A.    Claim 1: First Amendment**

Plaintiff's First Amendment claim alleges that Defendants retaliated against her exercise of free speech. To prove a First Amendment retaliation claim, a plaintiff must show that: "(1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). There must be a "nexus between the defendant's actions and an intent to chill speech." *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016). Here, there is no evidence that Rico fired the Launcher out of a desire to stop Plaintiff or other celebrants from expressing excitement over the Lakers' championship.[5] Accordingly, the Court grants judgment to Defendants on this claim.

---

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)

[5] The Court assumes, without deciding, that celebrating a sports championship is activity that would be constitutionally protected in this instance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

### B.   Claim 2: Fourth Amendment Excessive Force

Defendants' Motion focuses almost entirely on this claim, arguing that Rico was merely negligent in his actions and there can be no excessive force liability for negligent acts. Plaintiff responds that Defendants' argument is foreclosed by relevant Ninth Circuit law. The Court agrees with Plaintiff.

The mere fact that a use of force may have been directed at a third party, or at a crowd in general, does not necessarily bar an innocent bystander from bringing a Fourth Amendment claim. After all, a "person is . . . entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates [her] freedom of movement, *through means intentionally applied.*" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis added). Thus, an "unintended *person*" may bring a claim, so long as the police action was "not . . . the consequence of an unknowing act." *Id.* (emphasis added).

The Ninth Circuit has applied *Brendlin* to a police officer's use of less-lethal weaponry. *See Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). *Nelson* involved an officer who shot projectiles filled with pepper spray at a crowd in an attempt to disperse it. *Id.* at 877. One of the projectiles struck the plaintiff in the eye. The defendants in *Nelson* argued that there could be no liability because "Nelson was not individually targeted by officers, and therefore his shooting was unintentional and incapable of causing a Fourth Amendment violation." *Id.* at 876. The Ninth Circuit disagreed:

> Regardless of whether Nelson was the specific object of governmental force, he and his fellow students were the undifferentiated objects of shots intentionally fired in the direction of that group. Although the officers may have intended that the projectiles explode over the students' heads or against a wall, the officers' conduct resulted in Nelson being hit by a projectile that they intentionally fired towards a group of people of which he was a member. Their conduct was intentional, it was aimed towards Nelson and his group, and it resulted in the application of physical force to Nelson's person as well as the termination of his movement.

*Id.; see also Villanueva v. California*, 986 F.3d 1158, 1167–68 (9th Cir. 2021) (holding that a car passenger who was shot by police had a viable Fourth Amendment claim, even though officers were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

shooting at the driver). Accordingly, because Defendants' argument contradicts controlling precedent, the Court denies summary judgment on this claim.[6]

    **C.**    **Claim 3: Fourteenth Amendment**

Plaintiff's Fourteenth Amendment claim alleges that Defendants "placed Plaintiff in a more dangerous position than the one [they] found her in," citing to *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). But the "state-created danger" doctrine described by *Hernandez* applies when the government exposes Plaintiff to, or fails to prevent, harm from a third party. *See id.* at 1133 ("As a general rule, members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties . . . [but] [a]n exception to the rule applies [for state-created danger]."); *see also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) ("[A]lthough the state's failure to protect an individual against private violence does not generally violate due process, it can where the state action affirmatively places the plaintiff in a position of danger.") (internal quotations omitted). Plaintiff's allegations are that Rico himself harmed her, and that the City and Stabile caused her harm via insufficient training and policies. Plaintiff's allegations are not that Defendants exposed her to harm from a private actor. Accordingly, the Court grants judgment to Defendants on this claim.

    **D.**    **Claim 4: *Monell***

Plaintiff's *Monell* claim alleges that the City is liable on two grounds: (1) it has a policy or custom of failing to investigate or discipline officers' use of force in crowd-control situations; and (2) its policy regarding deployment of the Launcher is insufficient and fails to train its officers on the Launcher's use. Defendants make only one argument against these claims: that there is no underlying constitutional violation, so there can be no *Monell* liability.

Defendants' argument rests on the well-known principle that "a person [that] has suffered no constitutional injury at the hands of the individual police officer" cannot bring a viable *Monell* claim. *Heller v. City of Los Angeles*, 475 U.S. 796, 799 (1986). But the Court has already found that Plaintiff's

---

[6] Even if *Nelson* did not foreclose Defendants' argument, there is a genuine dispute of fact as to whether Rico aimed at Plaintiff, at the crowd in general, or at a third-party assailant. Defendants ask the Court to take Rico's deposition testimony at face value, wherein he states that he was aiming at an individual who was "attempt[ing] to throw [a] bottle when [he] . . . utilized the less-lethal round." (Conlogue Decl., Ex. 31 at 78–79.) The body-worn camera footage raises doubts regarding Rico's testimony, given that Rico could not clearly identify the purported assailant while rewatching the footage. (*Id.* at 80.) Additionally, Rico claims that his assailant was to the left of a certain tree, but the footage reveals that he shot to the right of that tree. Given the uncertainty over Rico's point of aim, there is a clear dispute as to his target.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

Fourth Amendment claim survives summary judgment. Defendants' sole argument is thus not applicable. In addition, Defendants expressly (and somewhat surprisingly) do not dispute the following facts:

- Officer Rico is one of several examples of LAPD's failure to train on the Launcher. (*Id.* No. 61);
- The LAPD's policy regarding deployment of the Launcher is insufficient. (*Id.* No. 62.)

(*See* Defs.' Statement of Disputed Facts at 4, ECF No. 95-1 (identifying these facts as "[u]ndisputed").)

Because the Court has denied summary judgment on at least one underlying constitutional claim, and Defendants have failed to dispute that LAPD's policies are deficient (at least as to training on and deployment of the Launcher), the Court denies summary judgment on this claim.

### E.   Claim 5: Supervisory Liability Against Stabile

Plaintiff's supervisory liability claim seems to be based on similar theories as her *Monell* claim. Defendants argue that there is no evidence to support liability against Stabile.[7] The Court agrees with Defendants.

Supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, the plaintiff must show that each individual "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Put a different way, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. *Id.* To establish liability, a plaintiff must show the supervisor's "culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (internal citation omitted). Put a different way, supervisor liability only exists where the supervisor was personally involved in the violation or where there is a "sufficient causal connection between the supervisor's wrongful conduct and the . . . violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

There is no evidence here to show that Stabile was either personally involved in the alleged violation, or that he is the individual responsible for LAPD's potential "culpable action or inaction in . . .

---

[7] Defendants also repeat their failed argument from above, *i.e.*, that there is no underlying violation and therefore no supervisor liability. This argument fails for the reasons previously discussed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-07607-RGK-JEM | Date | August 12, 2022 |
|---|---|---|---|
| Title | *Kimberly Marroquin v. Unidentified LAPD Officer, et al* | | |

training, supervision, or control of . . . subordinates." *Starr*, 652 F.3d at 1208. Indeed, the portions of Stabile's deposition submitted by Plaintiff involve discussions about LAPD's general policies and training, rather than any conduct, training regime, or supervisory action individually attributable to Stabile. (*See* Conlogue Decl., Ex. 35, ECF No. 92-13.) In her Opposition, Planitiff argues only to the City's *Monell* liability, rather than Stabile's supervisory liability, implicitly conceding the lack of evidence supporting the claim. (*See* Pl.'s Opp'n to Mot. at 14–16.) With no evidence to show that Stabile is individually liable, the Court grants summary judgment to Defendants on this claim.

F. **Claims 6–8: State Claims**

Plaintiff also brings three state-law claims. Defendants argue perfunctorily that the Court should decline to exercise supplemental jurisdiction over these claims after it adjudicates the federal claims. The problem for Defendants, of course, is that two federal claims remain. The Court thus declines to dismiss Plaintiff's state-law claims.

V. **CONCLUSION**

For the foregoing reasons, the Court:

- **GRANTS** Defendants' Motion as to Claim 1 (First Amendment), Claim 3 (State-Created Danger), and Claim 5 (Supervisory Liability);
- **DENIES** Defendants' Motion as to Claim 2 (Fourth Amendment), Claim 4 (*Monell*), and all state-law claims;
- **DISMISSES** Stabile from the action; and
- **DISMISSES** all remaining LAPD officer defendants but Rico: (1) Matthew Clymer; (2) Alfred Corso; (3) Officer Lyman; (4) Officer Santiago; and (5) Herman Usma.

Accordingly, the matter proceeds as to Rico and the City on Claims 2, 4, and 6–8.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | jre/a |